UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KEVIN WINDISCH, M.D.,

    Plaintiff,

v.

HOMETOWN HEALTH PLAN, INC., et al.,

    Defendants.

3:08-CV-00664-RCJ-(RAM)

**ORDER**

Plaintiff Kevin Windisch, M.D., filed the present putative class action lawsuit against Defendants Hometown Health Plan, Inc., Hometown Health Partners, Benefit Administrators, Inc., Hometown Health Providers Insurance Company, Inc., and Renown Health, alleging consumer fraud, breach of contract, and breach of the covenant of good faith and fair dealing. Presently before the Court is Defendants' Motion to Dismiss (#18). Plaintiff responded and Defendants replied. (#22 & #30). Defendants also filed notice of supplemental authority in support of their motion and Plaintiff responded. (#40 & #41). The Court held a hearing on February 19, 2010. The Court now issues the following order. IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#18) is DENIED.

## I. BACKGROUND

### A. General Background

Defendant Hometown Health Plan, Inc., ("Hometown HMO"), is a health maintenance organization, ("HMO"). (Compl. (#1) ¶ 7). Defendant Hometown Health Providers Insurance Company, Inc., ("Hometown PPO"), is a preferred provider organization, ("PPO"). (Id. at ¶ 9).

1

HMOs and PPOs enter into agreements with enrollees to provide health insurance in exchange for premium payments. They enter into agreements with health care providers for the providers to provide care to enrollees at specified prices. (Def.'s Mot. to Dismiss (#18) 3:2–8).

Defendant Hometown Health Partners, Benefits Administrators, Inc., ("Hometown Health Partners"), was a third-party administrative and management service organization. (Compl. (#1) ¶ 8). In 2004, Hometown Health Partners merged into Hometown PPO and ceased to exist as a separate entity. (Def.'s Mot. to Dismiss (#18) 3:15–17). Before the merger, Hometown Health Partners provided a provider network and services such as claims adjudication, re-pricing, eligibility verification, utilization review, and case management. (Compl. (#1) ¶ 21). Hometown PPO now provides these services. (Def.'s Mot. to Dismiss (#18) 3:18–23). Defendant Renown Health is the parent company of Hometown HMO. (Compl. (#1) ¶ 10).

Plaintiff Kevin Windisch, M.D., ("Plaintiff"), is a physician. (*Id.* at ¶ 6). Plaintiff entered into the Primary Care Physician Agreement with Hometown HMO and Hometown Health Partners in 2003. (Def.'s Mot. to Dismiss (#18) Ex. 5 at 1, 13).

**B.    The Primary Care Physician Agreement**

Plaintiff agreed to provide enrollees with applicable primary care services consistent with Hometown HMO and Hometown Health Partners' utilization management and quality assurance procedures. (Def.'s Mot. to Dismiss (#18) Ex. 5 at III.A, att. A).[1] Hometown HMO and Hometown Health Partners agreed to compensate Plaintiff for applicable primary care services according to their standard payment policies. (Def.'s Mot. to Dismiss (#18) Ex. 5 at II.C, att. A). Hometown HMO agreed to compensate Plaintiff at 85% of the billed charges to

---

[1] The court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" without converting a motion to dismiss to a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). A document is incorporated by reference in a complaint if the complaint extensively refers to the document and the document forms a basis of a claim. *Ritchie*, 342 F.3d at 908.

2

its enrollees. (*Id.* at att. C-1.II). Hometown Health Partners agreed that third-party insurers would compensate Plaintiff at 115% of current Medicare fees, or using alternative methods if there are no ascertainable Medicare fees. (*Id.* at att. C-2.II, att. C-3.I). Hometown HMO and Hometown Health Partners also agreed to pay certain set amounts for various drugs and immunizations. (*Id.* at ex. 1, ex. 2).

The Primary Care Physician Agreement defines "Covered Services" as "health care services covered under a group or individual coverage agreement issued and/or administered by [Hometown HMO and Hometown Health Partners], the relevant portions of which shall be made available to [Plaintiff] by [Hometown HMO and Hometown Health Partners]." (*Id.* at I.C). However, the Primary Care Physician Agreement does not explicitly limit Hometown HMO and Hometown Health Partners' obligation to compensate Plaintiff to "Covered Services" or Plaintiff's obligation to perform services to "Covered Services." (*See id.* at II.C, III.A).

### C. Complaint

On December 12, 2008, Plaintiff sued Hometown HMO, Hometown PPO, Hometown Health Partners, and Renown Health, (collectively, "Defendants"), in this Court for breach of contract, breach of the implied covenant of good faith and fair dealing, and consumer fraud under Nevada Revised Statute § 41.600. (Compl. (#1)).

In his complaint, Plaintiff alleges that Defendants carried out "a scheme to deny, impede, delay, and reduce lawful reimbursement to Plaintiff" and a putative class of healthcare providers who rendered services to Defendants' enrollees. (Compl. (#1) ¶ 2). Plaintiff alleges the following. Defendants refuse to pay for more than one service per visit or incident (known as "bundling"), change submitted claims to billing codes with lower reimbursement rates, (known as "downcoding"), and refuse to reimburse for codes for increased levels of reimbursement for complicated cases, (known as "modifiers"). (*Id.* at ¶ 3.a). Defendants improperly apply guidelines to deny payments for services. (*Id.* at ¶ 3.b). Defendants reimburse physicians for vaccines at a rate lower than the actual cost physicians must pay, but represent that they fully cover the vaccines to enrollees. (*Id.* at ¶ 3.c). Defendants fail to provide adequate staffing to deal with physicians' inquiries. (*Id.* at ¶ 3.d). Defendants fail to

3

make timely payments to physicians. (*Id.* at ¶ 3.e). Defendants fail to sufficiently explain why they deny or reduce payments to physicians and fail to provide physicians with fee schedules or coding procedures. (*Id.* at ¶¶ 3.f, 3.g). Defendants use their unequal bargaining positions to force physicians into one-sided agreements. (*Id.* at ¶ 3.h). Defendants also misrepresented to the Nevada Division of Insurance that its provider agreement stated that certain services were not reimbursable when performed in a physician's office. (*Id.* at ¶ 50).

## II. LEGAL STANDARD

A court must dismiss a cause of action that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001).

## III. ANALYSIS

### A. ERISA preemption

Section 514(a) of the Employee Retirement Income Security Act of 1974, ("ERISA"), generally "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "A 'law 'relate[s] to' a covered employee benefit plan for purposes of § 514(a) 'if it [1] has a connection with or [2] reference to such a plan.'" *California Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 324 (1997) (quoting *District of Columbia v. Greater Washington Bd. of Trade*, 506

///

///

4

U.S. 125, 129 (1992)). "Where a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . . that 'reference' will result in pre-emption." *Dillingham*, 519 U.S. at 325.

Courts should not employ "uncritical literalism" when deciding whether a state law has a connection to an ERISA plan. *Id.* To determine whether a state law has a connection to an ERISA plan, courts should consider the objectives of ERISA and the effect of the state law on ERISA plans. *Id.* Courts should assume that Congress did not intend to bar state action in areas traditionally regulated by states unless that purpose is clear. *Id.* "Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)). Congress enacted § 514 "to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Davila*, 542 U.S. at 208 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

To determine whether a state law is connected with an ERISA plan, courts consider the following factors: "'(1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans; (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law; (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee.'" *Operating Engineers Health & Welfare Trust Fund v. JWJ Contracting Co.*, 135 F.3d 671, 678 (9th Cir. 1998) (quoting *Aloha Airlines, Inc. v. Ahue*, 12 F.3d 1498, 1504 (9th Cir. 1993)); *see also Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 723 (9th Cir. 1997) (listing similar factors).

Congress intended ERISA to preempt state law in three areas: (1) laws that mandate employee benefit structures or their administration; (2) laws that bind employers or

administrators to choices or that preclude uniform practice so that they regulate an ERISA plan; and (3) laws that provide an alternate enforcement mechanism for obtaining ERISA plan benefits. *Arizona State Carpenters*, 125 F.3d at 723. "'The key to distinguishing between what ERISA preempts and what it does not lies . . . in recognizing that the statute comprehensively regulates certain relationships: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee.'" *Id.* at 724 (quoting *Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521–22 (9th Cir.1993)).

A claim does not relate to an ERISA plan if it requires no interpretation of the plan, distribution of benefits from the plan, or involves no dispute over benefits previously paid. *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1069 (9th Cir. 2005). Preemption exists when "interpretation of ERISA law lies at the heart of the dispute." *Id*; *see also Fresno Cmty. Hosp. & Med. Ctr. v. Souza*, No. CV F 07-0325, 2007 WL 2120272, at * 5–6 (E.D. Cal. July 23, 2007) (holding that ERISA § 514 preempts provider's claims against ERISA plan trustees because their agreement required insurer to only pay for services covered under an ERISA plan).

Section 514 does not preempt a provider's independent claim for misrepresentation when an insurer misrepresents to a provider that a procedure is covered under an ERISA plan for a patient and the patient is not actually a participant in the ERISA plan. *The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1008 (9th Cir. 1995). Nor does it preempt a provider's claims against an insurer over changes to the fee schedule in a provider agreement. *See Blue Cross of California v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999). In *Blue Cross*, the court held that the plaintiff's petition to compel arbitration of a dispute over changes in the provider agreements' fee schedules was not preempted by § 514. *Id.* at 1049–1052. In such cases, the dispute is over the amount of payment under the provider agreement rather than the right to payment under the ERISA plan. *Id.* at 1051.[2]

---

[2] The Ninth Circuit has held that a plaintiff must have standing to bring an ERISA claim for there to be ERISA preemption of state-law claims. *See Infantino v. Transamerica Ins. Group*, 66 F.3d 335 (9th Cir. 1995) (unpublished table decision). But it has only done so in an unpublished decision. The *Infantino* decision is not binding precedent. *See* 9th Cir. Rule

Courts are cautious of plaintiffs artfully pleading their complaints so as to do an end-run around ERISA preemption by making it seem like their claims will require no interpretation of an ERISA plan. *See Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*, 321 Fed. App'x 563, 564–65 (9th Cir. 2008). In *Catholic Healthcare*, the court relied on its own reading of plaintiff's complaint and confirmation by the plaintiff's counsel to conclude that the plaintiff's claims would not require interpretation of the ERISA plan because the complaint asserted claims based on the direct contractual relationship between the provider and the insurer. *Id.* Still, in order to prevent an end-run around ERISA preemption, the court precluded incorporation of the ERISA plan into the terms of the separate contract. *Id.* at 565; *see also In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1292–93 (S.D. Fla. 2003) (holding that provider's claim against insurer was not preempted by ERISA because the defendants already determined that the procedures were covered and the issue was whether the defendants could deny payment for covered services "based upon facts that do not relate to issues of coverage, for example, bundling and downcoding").

Plaintiff contends that there is no dispute over coverage of the ERISA plan in this case. (Pl.'s Opp'n (#22) 10:9–10). Plaintiff asserts that its state-law claims are based exclusively on the Primary Care Physician Agreement and are independent of Defendants' enrollees' ERISA plans. (*Id.* at 7:5–8). Plaintiff further asserts that it is only challenging reduction in payment for services that Defendants have already determined are covered under ERISA plans. (*Id.* at 10:27–11:16).

Plaintiff's allegations are independent of the ERISA plan. Plaintiff's claim for consumer fraud rests on allegations that Defendants delayed and impeded reimbursements. (Compl. (#1) ¶ 70). Plaintiff's claim for breach of contract rests on allegations that Defendants: reclassified the service Plaintiff performed to ones with lower reimbursement rates (known as "downcoding"); grouped separate services that Plaintiff performed into single services with lower total reimbursement rates (known as "bundling"); and denied Plaintiff's claims for extra

---

36-3(a).

7

compensation when covered procedures involved extra-ordinary work (known as "modifiers"); delayed and impeded reimbursements; failed to pay interest on late payments; and failed to adequately explain its justification for delays, denials, and reductions. (*Id.* at ¶¶ 79–81). Plaintiff's claim for breach of the covenant of good faith and fair dealing rests on allegations that Defendants: delayed and impeded reimbursements; failed to pay interest on late payments; and failed to adequately explain its justification for delays, denials, and reductions. (*Id.* at ¶¶ 85–87).

Though Plaintiff mentions denials of coverage by Defendants in his complaint, it is clear that Plaintiff's causes of action are based on unlawful performance under the Primary Care Physician Agreement once coverage under the ERISA plans has been determined. Plaintiff has affirmatively taken the position that he is only challenging Defendants' adjudication and payment of claims that have already been determined to be covered. (Pl.'s Reply to Notice (#41) 2:24–3:1). ERISA does not preempt Plaintiff's claims because they do not require the Court to interpret ERISA plans.

**B.   Consumer fraud**

Plaintiff alleges that Defendants violated Nevada Revised Statute § 41.600 *et seq.* by engaging in unfair and deceptive acts under Nevada Revised Statute § 598.0915 *et seq.* (Compl. (#1) ¶ 70). Defendants argue that Plaintiff's claim under § 41.600 fails to state a claim upon which relief may be granted for three reasons: (1) an ordinary request for payment is not a deceptive trade practice; (2) Plaintiff and the purported class are not victims of the alleged consumer fraud; and (3) Plaintiff had alleged no violation of Nevada's Deceptive Trade Practices Act. (Def.'s Mot. to Dismiss (#18) 12:3–12).

"An action may be brought by any person who is a victim of consumer fraud." Nev. Rev. Stat. § 41.600(1). To sustain a cause of action for consumer fraud, a plaintiff must prove that "(1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009) (predicting how Nevada courts would rule).

///

"Consumer fraud" includes "[a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive." *Id.* at § 41.600(2)(e). An action for consumer fraud is not limited to traditional consumers—purchasers of goods used primarily for personal, family, or household purposes rather than research or business. *See Reva Int'l, Ltd. v. MBraun, Inc.*, No. 03:06-CV-00306, 2007 WL 4592216, at *6 (D. Nev. 2007). A corporate manufacturer may sustain a claim for consumer fraud based on false representations made about the manufacture and quality of industrial products it purchases. *Id.*

Plaintiff contends that his claim falls under Nevada Revised Statutes § 598.0915(15), which states: "A person engages in a 'deceptive trade practice' if, in the course of his business or occupation, he . . . [k]nowingly makes any other false representation in a transaction." (Pl.'s Opp'n (#22) 13:18–27).

Plaintiff contends that Defendants made false representations in a transaction by not adequately disclosing to physicians how they use coding guidelines and calculate compensation. (*Id.* at 4–24). Plaintiff alleges that Defendants falsely represent their reasons for downcoding services and that their real reasons are their own financial interests. (*Id.* at 14:24–27). Plaintiff also argues that Defendants falsely represented to patients that certain vaccines would be fully covered and falsely represented to the Nevada Division of Insurance that a provider contract stated it did not cover a procedure if performed in a physician's office. (*Id.* at 14:28–15).

Defendants contend that § 598.0915(15) cannot be read to apply outside of transactions for the sale of goods and services aimed at the general public because such a reading would mean any misrepresentation in any commercial transaction would give rise to a claim for deceptive trade practices. (Def.'s Mot. to Dismiss (#18) 14:6–20; Def.'s Reply (#30) 8:9–20). Defendants suggest the legislative history supports their position.

But, the language of the statute is plain and is not limited to sales to consumers of goods and services. *See Austin v. State*, 151 P.3d 60, 64 (Nev. 2007) (holding the unambiguous plain language of a statute trumps legislative history). Several other subsections specifically limit their application to the sale of goods and services, but § 598.0915(15) does

not. *See* Nev. Rev. Stat. § 598.0915. Furthermore, courts have found deceptive trade practices in contexts outside the sale of goods and services to the general public. *See Reva Int'l*, 2007 WL 4592216, at *6 (holding that a corporate manufacturer may sustain a claim for consumer fraud based on false representations made about the manufacture and quality of industrial products it purchases); *George v. Morton*, No. 2:06-CV-1112, 2007 WL 680789, at (D. Nev. March 1, 2007) (applying deceptive practices statute to transaction between a commercial real estate company and a marketing agent).

Defendants rely on a Florida district court's interpretation of the New Jersey Consumer Fraud Act, *In re Managed Care Litig.*, 298 F. Supp. 2d 1259 (S.D. Fla. 2003), to support their position that Plaintiff cannot base a claim for consumer fraud on representations not made to the general public for the sale of goods and services. (Def.'s Mot. to Dismiss (#18) 14:21–16:25). But the New Jersey Consumer Fraud Act expressly limits its application to misrepresentations that occur "in connection with the sale or advertisement of any merchandise or real estate." N.J. Stat. Ann. § 56:8-2. Therefore, this non-binding decision is not persuasive. Regardless, the putative class of physicians constitute a section of the general public and Defendants provide services to the putative class.

Defendants also argue that Plaintiff cannot sustain a cause of action for consumer fraud because Plaintiff alleges non-disclosure rather than affirmative false representations. (Def.'s Reply (#30) 15:13–16:3). "With respect to the false representation element, the suppression or omission 'of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such fact does not exist.'" *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007) (discussing the false representation element of the tort of intentional misrepresentation) (quoting *Collins v. Burns*, 741 P.2d 819, 821 (Nev. 1987)). Therefore, a cause of action under § 598.0915(15) may be based upon a non-disclosure as well as an affirmative misrepresentation.

Defendants contend that Plaintiff is not a "victim" of consumer fraud because Plaintiff does not compete directly with Defendants or purchase goods and services from Defendants and suffered no damage from Defendants' deceptive trade practices. (Def.'s Mot. for Summ.

J. (#18) 17:1–18:2). An action under § 41.600 may only be brought by a victim of consumer fraud. Courts have interpreted "victim" broadly. In *Southern Serv. Corp. v. Excel Bldg. Servs., Inc.*, the court held that a competitor may be a "victim" under the statute. 617 F. Supp. 2d 1097, 1100 (D. Nev 2007). The court based its decision on the fact that consumer fraud is defined as deceptive practices and the deceptive practices statute created a presumption that deceptive practices harm competitors. *Id.* at 1099.

Plaintiff and the putative class members are victims of Defendants' alleged misrepresentations to their enrollees and the Nevada Division of Insurance under the common meaning of the term. Defendants' alleged deceptions interfered with Plaintiff and the putative class members' business relations with their patients. Furthermore, it is reasonable to infer from Plaintiff's complaint that Defendants may have made direct misrepresentations to Plaintiff and the putative class members regarding performance of the Primary Care Physician Agreement. Drawing inferences in a light most favorable to Plaintiff, Plaintiff has stated a claim for consumer fraud.

### C.    Rule 9(b) particularity

Plaintiff pled his claim with the particularity required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[W]here fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Courts have held that claims made under § 598.0915(15) are grounded in fraud when they rely on the same fraudulent statements as a claim for fraud and must satisfy the particularity requirement of Rule 9(b). *Geroge v. Morton*, No. 2:06-CV-1112, 2007 WL 680789, at *11 (D. Nev March 1, 2007).

Plaintiff contends that his claim is not grounded in fraud because he has not alleged intent to deceive and reliance or an overarching fraudulent scheme. (Pl.'s Opp'n (#22) 19:25–26, 20:24–26). The elements of common-law fraud are: "(1) a misrepresentation made

by the defendant; (2) defendant's knowledge of the misrepresentation; (3) defendant's intent to defraud the plaintiff (scienter); (4) reliance by the plaintiff; and (5) resulting damage to the plaintiff from such reliance." *Sec'y of State v. Tretiak*, 22 P.3d 1134, 1140 n.14 (Nev. 2001).

Even if the Court assumes that Plaintiff's claim is grounded in fraud, Plaintiff has met the pleading burdens of Rule 9(b). Plaintiff has sufficiently described the actions by Defendants that he claims constitute consumer fraud.

### D.  Alter ego liability

Plaintiff argues that Renown Health is liable for Hometown HMO and Hometown PPO's actions under an alter ego theory that he will be able to prove after discovery. (Pl.'s Opp'n (#22) 22:10–23:27). To establish alter ego liability: "(1) The corporation must be influenced and governed by the person asserted to be its alter ego[;] (2) [t]here must be such unity of interest and ownership that one is inseparable from the other; and (3) [t]he facts must be such that adherence to the fiction of a separate entity would, under the circumstances, sanction a fraud or promote injustice." *Hotel Gift Shop v. Bonanza No. 2*, 596 P.2d 227, 229 (Nev. 1979). Plaintiff notes that his complaint states that Renown Health operated Hometown HMO and Hometown PPO and included the parent companies of the Hometown Health defendants in its allegations. (*Id.* at 23:9–21).

Defendants contend that Plaintiff's allegations are insufficient to survive dismissal. (Def.'s Reply (#30) 23:24–27). Defendants rely on *Hotel Gift Shop*, for the proposition that mutuality of interests and interlocking officers is not enough to establish alter ego liability. But, *Hotel Gift Shop* involved the appeal of a trial court's finding at trial that a company was not the alter ego of a party. *Id.* at 229. It did not apply the standards of a motion to dismiss. Taking all inferences in Plaintiff's favor, Plaintiff's claim against Renown Health survives dismissal. Further discovery may establish alter ego liability.

///

///

///

///

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendants' Motion to Dismiss (#18) is DENIED.

DATED: This 5th day of March, 2010.

_____
Robert C. Jones
UNITED STATES DISTRICT JUDGE