| | |
|---|---|
| **WHATLEY DRAKE & KALLAS, LLC**<br>Edith M. Kallas (*pro hac vice*)<br>ekallas@wdklaw.com<br>Ilze C. Thielmann (*pro hac vice*)<br>ithielmann@wdklaw.com<br>Max Schwartz (*pro hac vice*)<br>mschwartz@wdklaw.com<br>1540 Broadway, 37th Floor<br>New York, NY 10036<br>Tel: (212) 447-7070 / Fax: (212) 447-7077<br><br>**EYSTER, KEY, TUBB, ROTH,<br>MIDDELTON & ADAMS, LLP**<br>Nicholas B. Roth (*pro hac vice*)<br>Nbroth@eysterkey.com<br>P.O. Box 1607<br>Decatur, AL 35601<br>Tel: (256) 353-6761 / Fax: (256) 353-6767<br><br>**ALBRIGHT, STODDARD,<br>WARNICK & ALBRIGHT**<br>D. Chris Albright<br>dca@albrightstoddard.com<br>Dustin Johnson<br>djohnson@albrightstoddard.com<br>801 South Rancho Drive, Suite D-4<br>Las Vegas, Nevada 89106<br>Tel: (702) 384-7111 / Fax: (702) 384-0605<br><br>*Attorneys for Plaintiff* | **HOLLAND & HART LLP**<br>Jeremy Nork, Esq.<br>jnork@hollandhart.com<br>Tamara Jankovic, Esq.<br>tjankovic@hollandhart.com<br>5441 Kietzke Lane, Second Floor<br>Reno, Nevada 89511<br>Tel: (775) 327-3000 / Fax: (775) 786-6179<br><br>**HOGAN LOVELLS US LLP**<br>Emily M. Yinger (*pro hac vice*)<br>emily.yinger@hoganlovells.com<br>N. Thomas Connally (*pro hac vice*)<br>tom.connally@hoganlovells.com<br>Michael M. Smith (*pro hac vice*)<br>michael.m.smith@hoganlovells.com<br>Park Place II<br>Ninth Floor<br>7930 Jones Branch Drive<br>McLean, Virginia 22102<br>Tel: (703) 610-6161 / Fax: (703) 610-6200<br><br>*Attorneys for Defendants* |

# THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KEVIN WINDISCH, M.D., on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>HOMETOWN HEALTH PLAN, INC., HOMETOWN HEALTH PARTNERS, BENEFIT ADMINISTRATORS, INC., HOMETOWN HEALTH PROVIDERS INSURANCE COMPANY, INC., AND RENOWN HEALTH,<br><br>        Defendants. | Case No.: 3:08-CV-00664-RCJ-RAM<br><br>**JOINT REPORT REGARDING SCHEDULING AND DISCOVERY** |

Pursuant to the Court's Order of May 6, 2010 [Doc. 68], Plaintiff and Defendants have conferred and reached agreement on many outstanding scheduling and discovery issues. The parties have been proceeding with discovery pursuant to their agreements and under the schedule set forth herein. Only two issues remain on which the Parties have not been able to reach agreement (*see* Section 6 below). The parties have agreed to file opening briefs of no more than 10 pages on the those two issues simultaneously at 2:00 p.m. PDT on July 28, 2010, and responsive briefs of no more than 10 pages simultaneously at 2:00 p.m. PDT on August 4, 2010, and then respectfully request a hearing before the Court on those issues.

**1.     Discovery Plan.**

  **A.     Scheduling.**

    **i.     Timing of Discovery.**

The discovery needed for class certification will be completed by December 1, 2010. If the Court denies certification, the Parties promptly will confer thereafter to schedule deadlines for the completion of discovery on named Plaintiff's claims and a trial date for the named Plaintiff's individual action. If the Court grants class certification as to any part of the action, the Parties promptly will confer about deadlines for the completion of discovery and pre-trial proceedings.

    **ii.     Experts.**

Expert witnesses for class certification, if any, will be disclosed, along with a written report prepared and signed by the witness pursuant to Federal Rule of Civil Procedure 26, as follows:

- Plaintiff: December 1, 2010
- Defendant: January 21, 2011
- Plaintiff's rebuttal:  February 4, 2011

    **iii.     Class Certification Briefing.**

- Plaintiff's motion for class certification (not to exceed 30 pages): December 21, 2010.
- Defendants' opposition to Plaintiff's motion (not to exceed 30 pages): February 17, 2011.

2

- Plaintiff's reply in support of his motion (not to exceed 20 pages): March 31, 2011.

### B.     Limits on Initial Discovery Prior to Class Certification.

#### i.     Interrogatories

Plaintiff may serve a maximum of 20 interrogatories on Defendants prior to class certification. Defendants may serve a maximum of 20 interrogatories on Plaintiff prior to class certification.

#### ii.    Requests for Admission

Plaintiff may serve a maximum of 20 requests for admission on Defendants prior to class certification. Defendants may serve a maximum of 20 requests for admission on Plaintiff prior to class certification.

#### iii.   Depositions

Each party may take a maximum of three depositions prior to class certification, which includes one Rule 30(b)(6) deposition of Renown and one 30(b)(6) deposition of all other Defendants. The length of all depositions will be negotiated by the parties. Depositions will not be allowed on less than 14-days notice without leave of Court or agreement by the parties. The parties reserve the right to seek additional depositions if needed.

#### iv.    Document Requests

Plaintiff and Defendants have already served on each other all the document requests that they anticipate needing prior to class certification. With respect to Plaintiffs' document requests, served before the Court's ruling regarding the stages of discovery, the parties have reached agreement regarding the scope of Defendants' responses with respect thereto, with the exception of the two issues (claims data and medical necessity determinations) addressed below in Section 6. If any party believes that information uncovered during initial discovery warrants follow-up discovery requests, the parties will confer in good faith to agree on the number and scope of any additional requests. The parties may serve subpoenas requesting documents from third parties.

///

///

3

**2.     Electronically-Stored Information.**

Production of documents and information from electronic or computer-based media, *i.e.*, electronically stored information ("ESI"), if any, will be limited to data reasonably available to the parties in the ordinary course of business. Any ESI that exists in, or reasonably can be converted into, machine-searchable .tif or .pdf format will be produced in that format.

**3.     Duty to Preserve Evidence.**

With the exception of claims data and documents created by or sent to certain key individuals, no party will be required to preserve any evidence that was not in existence as of the last day of the month in which the party's document production in the initial phase of discovery has been completed.

**4.     Entry of Protective Order.**

The parties negotiated a stipulated protective order, which the Court entered on June 15, 2010 [D.E. 70].

**5.     Pre-Discovery Disclosures.**

The parties have made their initial disclosures.

**6.     Agreed Scope of Class Discovery and Issues In Dispute.**

The Parties have served Document Requests on each other and do not anticipate serving additional requests prior to class certification unless information uncovered during the course of initial discovery warrants follow-up discovery requests. After conferring on numerous occasions, the Parties have agreed on the scope of responsive documents with respect to all of Plaintiff's Document Requests except for those involving (1) claims data, and (2) Defendants' medical necessity determinations. With respect to Defendants' document requests, Plaintiff has agreed to produce documents responsive to all of Defendants' requests (subject to certain objections). With respect to these issues (which will be further addressed in the parties' briefs to the Court), the parties respectfully request a ruling from the Court and an opportunity to be heard with respect thereto.

///

///

4

### A. Claims Data.

#### i. Plaintiff's Position.

Plaintiff has sought a sampling of claims data – the particular claims that health care providers submit to Defendants seeking payment for services they have performed – in order to demonstrate that Defendants' claims processing policies and practices are standardized, are applied uniformly, and routinely harm Plaintiff and Class Members through down-coding, bundling, and denying modifiers. As an accommodation to Defendants, Plaintiff has in the alternative offered to wait until after class certification to receive claims data, if Defendants stipulate that they will not argue at class certification that the absence of proof relating to claims data, or the absence of an analysis of claims data, by Plaintiff precludes certification of a class, or that they will not use their own analysis of claims data to dispute any aspect of Plaintiff's motion for class certification. (This issue relates to Plaintiff's First Request For Production Of Documents, Requests Numbers 8, 20, 21, 27, 28, 29, and 34; however, apart from this issue or any other issues specifically discussed herein, the Parties have agreed on the appropriate scope of Defendants' production obligations for most of these requests).

Defendants assert, without demonstrating, that production of this data is "extremely expensive and burdensome" and unnecessary to Plaintiff's motion for class certification, but when offered the option of instead stipulating that it is unnecessary to do any sort of analysis of such data in order for class certification to be decided, Defendants refuse to do so. Thus, Plaintiff anticipates that Defendants are likely to argue in opposition to class certification that Plaintiff cannot demonstrate that the entire class is affected by Defendants' claims processing practices in a standardized and uniform manner, perhaps using their own analysis of claims data to show purported variations and individualized issues in the processing of claims to make such an argument. Accordingly, Plaintiff would use claims data to demonstrate that in fact the entire class is affected in a standardized and uniform manner and would conduct his own analysis to rebut any showing by Defendants that there are variations creating individual issues.

///

///

### ii. Defendants' Position

Producing claims data – even a representative sample – is extremely expensive and burdensome. Defendants processed approximately five million claims during the putative class period. Defendants already have agreed to produce Plaintiff's own claims data during Class Discovery. But Defendant should not be put to the enormous burden of producing additional claims data during Class Discovery because Plaintiff has not (and cannot) show how such *individualized* claims data is relevant to class certification. The central allegation underlying Plaintiff's complaint is that Defendants (a) use an automated system to process all claims; and (b) that this system reviews every claim the same way and applies certain "edits" to automatically downcode and bundle specific CPT codes and deny modifiers. *See* Compl. ¶ 3. Defendants do not dispute that they use a system to review every claim or that the system applies edits. Indeed, Defendants previously have disclosed their use of this system to all providers, including Plaintiff, and have agreed to produce *extensive* documentation to Plaintiff showing exactly how the system works, including documents showing the claims-processing logic and how the edits are applied during processing. Individualized claims that were processed using this logic will not reveal anything more than the underlying logic itself.

Contrary to Plaintiff's suggestion, no "analysis" of the putative class members' claims data is necessary for Defendants to show that Plaintiff's claims cannot be certified for class-wide adjudication: Plaintiff's claim under the NDTPA cannot be certified because Plaintiff cannot establish reliance – a required element of the claim – on a class-wide basis; Plaintiff's contract-based claims cannot be certified because individual factual issues will predominate over common issues (e.g., editing of CPT codes is not inherently improper, thus, Plaintiff must show that in each specific instance where an edit occurred, the edit was improper) and because the claims are not subject to generalized proof for all members of the putative class (e.g., there are thousands of CPT codes and every possible combination of codes is subject to thousands of different edits during processing, thus, to adjudicate Plaintiffs' claim on a classwide basis, the Court would have to review every single edit that could have been applied to every possible code

6

combination). As no class-wide data analysis is necessary to show that Plaintiff's claims should not be certified, Defendants should not be put to the burden of producing individualized claims data (or even a sample thereof) for any member of the putative class other than Plaintiff.

### B.     Medical Necessity.

#### i.     Plaintiff's Position.

Plaintiff has sought limited discovery regarding Defendants' purported use of "medical necessity" and "utilization review" to reduce payments to physicians. Plaintiff seeks this information in order to counteract any claim by Defendants that they have reduced or denied certain disputed claims because they fall within a global period, because they fall outside of medical necessity, or because they are swept up in utilization review (as those three terms are defined by Defendants), and to demonstrate that, to the contrary, Defendants have reduced or denied those claims through their general policy and practice of down-coding, bundling, and denying modifiers. That demonstration does not challenge Defendants' actual denial of claims based on medical necessity, global periods or utilization review. Plaintiff seeks limited discovery regarding Defendants' standardized *policies and practices* in these areas, to demonstrate on his class certification motion that such standardized policies and practices impact the class in a uniform manner.

This Court has already rejected Defendants' argument that Plaintiffs' claims are preempted by ERISA. Nevertheless, based upon Defendants' arguments and Defendants' discussions with Plaintiff regarding Plaintiff's discovery requests, Plaintiff anticipates that Defendants will seek to capitalize on the distinction between "coverage" and "claims processing" determinations and label *all* of their claims payment policies and practices as "coverage" decisions in order to exclude them from scrutiny in this action. Simply labeling certain payment policies and practices as being couched in "coverage" determinations does not, however, make it so. Moreover, establishing what Defendants' policies and practices actually are does not implicate the rationale for Defendants' conduct. In denying Defendant's Motion To Dismiss, this Court anticipated this issue at oral argument and stated that, "if the *proof* later is to the effect [that] the denial or deferral of payment or the downcoding is based upon a coverage decision,"

7

the outcome at trial or summary judgment could be different. (Transcript of Motion Hearing, Feb. 19, 2010, at 17) (emphasis added). That statement indicates that Plaintiffs are entitled to the basic discovery necessary to look behind the labels, at a policy and practice level, and to separate out those practices that are in fact based on "coverage" determinations and those that are actually improper bundling, downcoding, and modifier policies labeled as "coverage."

### ii. Defendants' Position.

Initially, Plaintiff has not explained how the rationale behind Defendants' automated edits is relevant to class certification, and thus has not shown why he needs Defendants' medical necessity or utilization review policies at the pre-certification stage. As discussed above, Plaintiff's claims are based on Defendants' use of an automated system that applies "edits" to reimbursement claims. Defendants do not dispute that they use a system to review every claim and do not dispute that the system applies automated edits. Any alleged hidden motive for applying an edit to deny a claim says nothing about whether the edit itself affected the class in a uniform manner.

More importantly, by seeking discovery of "medical necessity" determinations and "utilization review," Plaintiff is doing exactly what he told the Court he would not do in this case: challenging Defendants' coverage decisions. "Utilization review" is the process through which Defendants determine whether a given service is covered under a patient's health benefit plan. Among the reasons a service might not be covered is "medical necessity."

In moving to dismiss Plaintiff's claims, Defendants argued that the claims were preempted by ERISA because their adjudication would require the Court to decide whether certain services rendered by Plaintiff were covered under the terms of his patients' ERISA plans. *See* Mot. to Dismiss at 6-11 [D.E. 18]; Reply in Supp. of Mot. to Dismiss at 1-12 [D.E. 30]. To avoid dismissal, Plaintiff succeeded in persuading the Court that Defendants' coverage decisions were not "in play." *See* Mar. 5, 2010, Order at 8 [D.E. 53] ("Plaintiff has affirmatively taken the position that he is only challenging Defendants adjudication and payment of claims that have *already been determined to be covered*.") (emphasis added). Yet Plaintiff now seeks discovery of those same coverage decisions.

8

Plaintiff contends that he is not challenging actual denials of any claims on coverage grounds, but instead is trying to determine whether any such denials were, in fact, based on reasons other than coverage determinations. But the Court cannot determine whether a denial of coverage for a particular service was based on something other than an actual coverage determination without determining whether the coverage determination itself was valid under the relevant ERISA plan. If the coverage determination was valid, Plaintiff cannot show that it was based on anything other than a coverage determination under the ERISA plan. These are precisely the type of inquiries into the terms of ERISA plans that Plaintiff assured the Court it would *not* have to make in this case because, in Plaintiff's own words, "there is no dispute over coverage" here. Because coverage determinations are not disputed, Plaintiff is not entitled to discovery into those determinations.

## **CONCLUSION**

The parties respectfully request that the Court enter a scheduling order consistent with the agreements and schedule set forth herein. With respect to the two issues in dispute, the parties request an opportunity to present their arguments to the Court, and then a ruling from the Court with respect thereto. In the meantime, the parties will proceed with discovery under the terms and pursuant to the schedule to which they have agreed.

Respectfully submitted,

| ALBRIGHT, STODDARD, WARNICK & ALBRIGHT | HOLLAND & HART LLP |
|---|---|
| _____/s/_____<br>D. CHRIS ALBRIGHT, ESQ.<br>Nevada Bar No. 004904<br>DUSTIN A. JOHNSON, ESQ.<br>Nevada Bar No. 009306<br>801 South Rancho Drive, Bldg. D<br>Las Vegas, Nevada 89106<br>Tel: (702) 384-7111 / Fax: (702) 384-0605 | _____/s/_____<br>JEREMY NORK, ESQ.<br>Nevada Bar No. 4017<br>TAMARA JANKOVIC, ESQ.<br>Nevada Bar No. 9840<br>5441 Kietzke Lane, Second Floor<br>Reno, Nevada 89511<br>Tel: (775) 327-3000 / Fax (775) 786-6179 |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

DATED: July 22, 2010

**IT IS SO ORDERED**.

_____
UNITED STATES MAGISTRATE JUDGE

Dated: _____July 26_____, 2010

HOLLAND & HART LLP
5441 KIETZKE LANE
SECOND FLOOR
RENO, NV 89511

**PROOF OF SERVICE**

I, Meena Dalluge, declare:

I am employed in the City of Reno, County of Washoe, State of Nevada, by the law offices of Holland & Hart LLP. My business address is 5441 Kietzke Lane, Second Floor, Reno, Nevada 89511. I am over the age of 18 years and not a party to this action.

On July 22, 2010, I electronically filed the foregoing **JOINT REPORT REGARDING SCHEDULING AND DISCOVERY**, in compliance with the Federal Rules of Civil Procedure and LR 5-4, upon the parties in the case who are registered electronic case filing users. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by CM/ECF.

G. Mark Albright, Esq.
gma@albrightstoddard.com
D. Chris Albright, Esq.
dca@albrightstoddard.com
Albright Stoddard Warnick & Albright
801 South Rancho Dr.
Quail Park I, Building D-4
Las Vegas, Nevada 89106

Edith M. Kallas, Esq.
ekallas@wdklaw.com
Ilze C. Thielmann, Esq.
ithielmann@wdklaw.com
Max R. Schwartz, Esq.
mschwartz@wdklaw.com
Whatley Drake & Kallas, LLC
1540 Broadway, 37th Floor
New York, NY 10036

Nicholas B. Roth, Esq.
nbroth@eysterkey.com
Eyster, Key, Tubb, Roth, Middleton & Adam, LLP
402 East Moulton St., P.O. Box 1607
Dacatur, AL 35601

Charlene P. Ford, Esq.
eford@wdklaw.com
Whatley Drake & Kallas LLC
2001 Park Place North, Ste 1000
Birmingham, AL 35203

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on July 22, 2010.

/s/
Meena Dalluge

4875484_1.DOC