1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KEVIN WINDISCH,                                )        3:08-cv-00664-RCJ (WGC)
                                               )
             Plaintiff,                    )
                                               )        <u>**ORDER RE PLAINTIFF'S REQUEST**</u>
      vs.                                      )        <u>**FOR DISCOVERY OF CLAIMS DATA**</u>
                                               )
HOMETOWN HEALTH PLAN, INC., *et al.,*          )
                                               )
           Defendants                    )
_____        )

      Before the court is Plaintiff's Motion Pursuant to Magistrate Judge's Discovery Order for Production of Claims Data in Connection with his Motion for Class Certification. (Doc. #112.)[1] Defendants opposed (Doc. # 118) and Plaintiff replied (Doc. # 121, Doc. # 122 (Decl. of Pl.'s expert, Dr. Stephen Foreman)). Both parties filed sur-replies. (Doc. # 126 (Defs.'), Doc. # 127 (Pl.'s).) A hearing was held on January 5, 2012. (*See* Doc. # 129.)

# I. BACKGROUND

## A. FACTUAL & PROCEDURAL HISTORY

### 1. Complaint

      Plaintiff Kevin Windisch, M.D. (Plaintiff), is a pediatrician who has brought a class action against  healthcare organizations Hometown Health Plan, Inc., Hometown Health Partners, Benefit Administrators, Inc., Hometown Health Providers Insurance Company, Inc., and Renown Health (Defendants) for breach of contract, breach of the implied covenant of good faith and fair dealing, and consumer fraud under Nevada Revised Statutes (NRS) 41.600 and NRS Chapter 598. (Pl.'s Compl.

_____

[1] Refers to court's docket number.

(Doc. # 1).)

Specifically, Plaintiff alleges Defendants carried out "a scheme to deny, impede, delay, and reduce lawful reimbursement to Plaintiff" and a putative class of healthcare providers who rendered services to Defendants' enrollees. (Doc. # 1 at ¶ 2.) The crux of Plaintiff's Complaint is that Defendants refuse to pay for more than one service per visit or incident ("bundling"), change submitted claims to billing codes with lower reimbursement rates ("downcoding"), and refuse to reimburse at the proper rate in complex cases ("modifiers"). (*Id.* at ¶¶ 3.a.)

**2. Class Certification Discovery**

Defendants moved to dismiss Plaintiff's Complaint on March 19, 2009. (Doc. # 18.) Discovery was stayed until the issuance of the March 5, 2010 order denying Defendants' motion. (Doc. # 42, Doc. # 53.)

A discovery status conference was held before Magistrate Judge McQuaid on May 6, 2010. (Doc. # 68, Doc. # 72 (Transcript).) The court instructed the parties to meet and confer to determine what discovery would need to occur regarding class certification. (Doc. # 72 at 8:2-12.)

Subsequently, the parties filed a Joint Report Regarding Scheduling and Discovery. (Doc. # 73.) The parties highlighted two issues on which they could not agree: (1) claims data and (2) medical necessity determinations. (Doc. # 73 at 3-4.) Only the claims data issue is relevant for purposes of the instant Order. The parties agreed to brief these issues and have them resolved by the court. (*Id.*)

Plaintiff sought a sampling of claims data; that is, the particular claims that healthcare providers submit to Defendants seeking payment for services performed, in order to demonstrate that Defendants' claims processing policies and practices are standardized, applied uniformly, and routinely harm Plaintiff and class members through downcoding, bundling, and denying modifiers. (Doc. # 73 at 5.) Alternatively, Plaintiff agreed to wait until after class certification to receive this claims data if Defendants agreed to stipulate they would not argue at class certification that the absence of proof relating to claims data precludes class certification. (*Id.*)

Defendants argued that producing claims data would be extremely expensive and burdensome, and they had already agreed to produce Plaintiff's own claims data. (Doc. # 73 at 6.) In addition, Defendants argued that Plaintiff had not and could not show how this *individualized* claims data was

relevant to class certification. Plaintiff's Complaint alleged that Defendants used an automated system to process all claims, and this system reviews every claim the same way and applies certain "edits" to automatically downcode and bundle specific codes and deny modifiers. (*Id.*) Defendants argued that they did not dispute that they used a system to review every claims and that system applies edits, disclosed the use of this system to Plaintiff, and agreed to produce extensive documentation showing how the system works. (*Id.*)

Magistrate Judge McQuaid ordered that class certification discovery would be completed by December 1, 2010, and that class certification briefing would be completed by March 31, 2011, and that he would hold a hearing on September 24, 2010, regarding the claims data issue. (Doc. # 74, Doc. # 83.) The parties submitted briefing, largely reiterating their respective positions as set forth in their joint discovery report. (Doc. # 75-78.)

At the hearing, Plaintiff represented that "if defendants produce the documents that they said they would, that documentary evidence, taken together with the upcoming depositions of defendant--defendant's personnel knowledgeable in the categories of claims processing and provider contracts, will enable defendant -- will enable plaintiff to move for class certification." (Doc. # 113 at 3:1-8.) Plaintiff also represented that if he determined he needed more information, he would come back before the court. (*Id.* at 3:9-12.)

Importantly, Plaintiff unequivocally represented that Plaintiff did *not* need the claims data to support his class certification motion. Plaintiff stated, "[w]ith regard to these two issues, plaintiff's position-- plaintiff take [sic] the same posture with regard to both the medical necessity issue and the claims processing -- claims data issue, and that is that he doesn't need them to support his class certification motion." (Doc. # 113 at 3:13-18.) This was confirmed by Magistrate Judge McQuaid: "and you make that representation in your papers, and you make it here today, **you're not going to use that data to support your motion for class certification. If you don't, then you don't need it**." (Doc. # 113 at 3:24-25, 4:1-2 (emphasis added).)

While Plaintiff represented that he did not need the claims data to support class certification, it was also recognized that if Defendants utilized the claims data, or lack of claims data, in support of their opposition to class certification, Defendants would be told to "halt the proceedings and gird your

3

loins and start your computers running because I'm going to order you to produce that stuff." (Doc. # 113 at 4:1-9.) Plaintiff agreed with this course of action. (*Id.* at 4:1-14.) Therefore, Magistrate Judge McQuaid decided to hold the claims data issue in abeyance to "see what occurs during the class certification process." (*Id.* at 7:9-12.) Magistrate Judge McQuaid specifically instructed Plaintiff's counsel, "if you--when you see their opposition if you think that you need that information, I mean, just file a one-page document, renewal and request for that, and we'll have a hearing, and you'll get that order." (*Id.* at 7:13-16.)

On agreement of the parties, Magistrate Judge McQuaid extended the class certification discovery deadline to March 1, 2011, and ordered that class certification briefing was to be completed by June 30, 2011. (*See* Doc. # 85.) Magistrate Judge McQuaid made clear that in his order approving the stipulation, **"THERE SHALL BE NO FURTHER EXTENSIONS GRANTED."** (*Id.*)

### 3. Class Certification

Following extensive briefing, a hearing on Plaintiff's class certification motion was held before the Hon. Robert C. Jones, Chief United States District Judge, on September 27, 2011. (Doc. # 111, Doc. # 114 (Transcript).) After hearing argument, the court indicated its intention to deny the Motion for Class Certification (Doc. # 87) and Defendants' Motion to Exclude Opinions of Stephen Foreman for Purposes of Class Certification (Doc. # 88). (Doc. # 111, Doc. # 114.)

Judge Jones issued a written Order denying Plaintiff's Motion for Class Certification on October 7, 2011. (Doc. # 115.) Judge Jones identified the class sought to be certified by Plaintiff as follows: "All providers who are, or were, participating providers in the provider networks of [Defendants] in the state of Nevada at any time during the period from December 19, 2002 to present." (Doc. # 115 at 5-6 (citing Pl.'s Mot. for Class Certif. (Doc. # 87) at 1).) Judge Jones identified the gravamen of Plaintiff's claims as follows: "Defendants reimbursed Plaintiff and putative class members at an improperly low rate under the Agreement due to downcoding and bundling." (Doc. # 115 at 6.)

Judge Jones found that Plaintiff had not shown numerosity because Plaintiff had not demonstrated that the approximately 900 physicians who have agreements with Defendants have suffered the same downcoding or bundling determinations by Defendants. (Doc. # 115 at 6.) Judge

Jones characterized the flaw in Plaintiff's allegations, as far as class certification is concerned, as follows: "he has alleged the numerosity of persons who *may have been* harmed, but not the numerosity of persons who *have* been harmed[,]" and failed to "at least *allege* that the same act or acts by the defendant has caused the same harm to a sufficiently numerous class of persons[,]" which would require allegations "that such-and-such number of doctors with substantially similar agreements were subjected to such-and-such particular improper downcodings and/or bundlings." (*Id.* at 7.)

Judge Jones similarly determined that Plaintiff did not meet the commonality requirement because Plaintiff failed to provide "evidence that other doctors suffered the same precise downcodings or bundlings" to allow the court to "compare the standard logic used to process reimbursement claims against the Agreement and statute, respectively, and determine whether the use of the logic violated either, thereby determining the claims of many doctors 'in one stroke.'" (Doc. # 115 at 8.) The flaw once again, was Plaintiff's failure to "allege how many doctors were subjected to which particular improper downcodings and bundlings." (*Id.* at 9.)

With respect to typicality, Judge Jones found that Plaintiff failed to show that the particular downcoding and bundlings suffered by him were also suffered in common by a sufficiently numerous class. (Doc. # 115 at 12.)

### 4.  Motion for Production of Claims Data

On the same day that the Judge Jones indicated his intent to deny Plaintiff's Motion for Class Certification, Plaintiff filed the instant motion seeking production of the claims data. (Doc. # 112.)

## B. SUMMARY OF ARGUMENT

### 1.  Plaintiff's Motion (Doc. # 112)

Plaintiff's motion seeks the "immediate production" of claims data for the Class Period of December 19, 2002, to the present in order to satisfy his burden under Rule 23 with respect to class certification in light of the District Court's October 7, 2011 Order (Doc. # 115). (Doc. # 112 at 1-2.) Plaintiff argues that he is entitled to the claims data at this stage of the proceedings because of the discovery order entered by Magistrate Judge McQuaid on September 24, 2010. (*Id.* at 1.) Plaintiff further asserts that while he believes he has met the Rule 23 standards for class certification, to the extent Judge Jones's order denying class certification indicates that additional evidence is necessary,

1    he requests what he styles as the "immediate production" of such data. (*Id*. at 2.)

2         Preliminarily, the court points out that other than referencing the September 24, 2010 discovery

3    hearing before Magistrate Judge McQuaid, Plaintiff does not identify the particular request for

4    production under which he seeks production of the claims data. There is no question that Plaintiff's

5    motion can be characterized as a discovery motion since Plaintiff titles it "Plaintiff's Motion Pursuant

6    to Magistrate Judge's Discovery Order." (Doc. # 112.) Local Rule 26-7(b), governing discovery

7    motions, provides, "[d]iscovery motions will not be considered unless a statement of the movant is

8    attached thereto certifying that, after personal consultation and sincere effort to do so, the parties have

9    been unable to resolve the matter without Court action." L.R. 26-7(b). While Plaintiff asserts that

10   Defendants have refused in the past to produce the claims data, he has not provided the requisite

11   statement certifying a good faith effort to resolve this particular issue in connection with the pending

12   motion.

13        While Plaintiff has not styled his motion as a motion to compel discovery, likely because the

14   class certification discovery deadline has long since passed, it has the indicia of a motion to compel.

15   Under Local Rule 26-7(a), "[a]ll motions to compel discovery...shall set forth in full the text of the

16   discovery originally sought and the response thereto, if any." L.R. 26-7(a). Plaintiff has not complied

17   with this provision.

18        In fact, not only does Plaintiff's motion (Doc. # 112) fail to set forth the text of the particular

19   discovery request at issue, Plaintiff makes no mention of a specific request for production. (*Id*.)  In his

20   Reply, Plaintiff does indicate that the claims data was requested in connection with Plaintiff's First

21   Request for Production of Documents (Doc. # 121 at 3:12); however, Plaintiff again fails to point to

22   any specific discovery request.  Later on in Plaintiff's Reply, Plaintiff states that he "should be granted

23   discovery of the Defendants' claims data responsive to the Data Discovery Requests attached hereto."

24   (*Id*. at 4:27-5:1.) Plaintiff includes a footnote referencing Plaintiff's 30(b)(6) November 2011 Notice

25   to Defendants of Videotaped Deposition Relating to Electronic Claims Data and Production of

26   Threshold Information, identified as Exhibit A to Plaintiff's Reply, as well as the Request for

27   Production of Documents Relating to Claims Data, identified as Exhibit B to Plaintiff's Reply.  (*Id*.

28   at 5 n.  1.)  Plaintiff indicates that these discovery requests were served on Defendants on

1  November 3 and 4, 2011. (*Id.*)

2       While footnote 1 in Plaintiff's Reply refers to Exhibit A, this exhibit is actually a copy of

3  Plaintiff's Petition for Leave to Appeal from Order Denying Class Certification Pursuant to Rule 23(f).

4  (*See* Doc. # 121 Ex. A.) Attached to the Petition are Exhibits A-H, filed in support of the Petition.

5  (*Id.*) Since the exhibits to the Petition are identified alphabetically (A-H), it would have been helpful

6  to the court if Plaintiff had identified the exhibits to his Reply numerically.  Regardless, Exhibit A is

7  *not* the deposition notice that Plaintiff refers to in his Reply. (*See* Doc. # 121 at 5 n. 1, Ex. A.)

8  Exhibit A to the Petition, is a copy of Judge Jones's Order on class certification. (Id. at Ex. A to Ex.

9  A.)

10      Exhibit B to the Petition is a copy of Plaintiff's Memorandum in Response to Defendants'

11 Memorandum in Support of Defendants' Proposed Discovery Plan. (Doc. # 121 at Ex. B to Ex. A.)

12 Exhibit B to the Reply (not to be confused with Exhibit B to Exhibit A to Plaintiff's Reply) is the

13 transcript of the videotaped deposition of Tricha Hutchcraft. (Doc. # 121 Ex. B.)  Neither of these

14 documents are the documents referenced in footnote 1 of Plaintiff's Reply.

15      As it turns out, the deposition notice and accompanying request for production of documents

16 are actually set forth at Exhibits D and C, respectively to Plaintiff's Reply. (Doc. # 121 Ex. C, Ex.

17 D.)

18      Having identified the actual exhibits Plaintiff contends relate to the request for claims

19 production data, *i.e.,* Exhibits C and D to his Reply, the court is puzzled with how Plaintiff is now

20 seeking the production of documents in connection with discovery that was served *after* the close of

21 class certification discovery. (*See* Doc. # 121 Ex. C, Ex. D, indicating the deposition notice and

22 request for documents were served on November 4, 2011.)  Plaintiff's discovery motion is tied to the

23 September 24, 2010 discovery conference held by Magistrate Judge McQuaid, and therefore, this

24 deposition notice and request for production of documents, served in November 2011, have no

25 relevance to Plaintiff's motion.

26      Finally, on page six (6) of Plaintiff's Reply, he states that the claims data was sought in

27 connection with Request Number 29 of Plaintiff's First Request for Production of Documents. (Doc.

28 # 121 at 6:22-26.) Plaintiff identifies the discovery request as being set forth at Exhibit E to his Reply.

1    (Doc. # 121 Ex. E (and not Exhibit E to Exhibit A to the Reply).)

2         After undertaking a thorough review of the docket in this action, the court ascertained that

3    Plaintiff previously tied the claims data to Plaintiff's First Request for Production, Request Numbers

4    8, 20, 21, 27, 28, 29, and 34. (*See* Doc. # 73 (Pl.'s position in the Joint Report Regarding Scheduling

5    and Discovery).)  It is unclear why Plaintiff represented earlier on in the action that the claims data was

6    requested in Request Numbers 8, 20, 21, 27, 28, 29 and 34, but now only identifies Request Number

7    29.  In any event, Plaintiff should have identified the specific request and set forth the language of the

8    request in full in his moving papers. *See* L.R. 26-7(a).

9         Plaintiff has also filed a Petition for Leave to Appeal from Order Denying Class Certification

10   Pursuant to Rule 23(f) with the Ninth Circuit Court of Appeal. (Doc. # 119.)

11        **2.  Defendants' Opposition (Doc. # 118)**

12        Preliminarily, the court notes that Defendants style their brief as an Opposition to Plaintiff's

13   Motion for *Additional Discovery* in Support of Denied Motion for Class Certification. (Doc. # 118

14   (emphasis added).) Defendants argue that Plaintiff is really trying to resurrect his attempt at class

15   certification. (*Id*.  at 2:23-26.) Defendants assert that until the denial of the motion for class

16   certification, Plaintiff did not move for production of the claims data he now seeks. (*Id*. at 2:15-16.)

17        Defendants argue that Plaintiff is not entitled to further discovery because: (1) Plaintiff had

18   nineteen (19) months to conduct discovery regarding class certification prior to the March 1, 2011

19   discovery cutoff and prior to the September 27, 2011 class certification hearing; (2) during class

20   discovery, Plaintiff represented that he did not need the claims data of other providers that he now

21   seeks and Defendants did not rely on the claims data in its opposition to class certification; (3) Plaintiff

22   seeks claims data for all of Defendants' participating providers, not just those who suffered the same

23   alleged injury; (4) Plaintiff failed to identify any per se improper edits applied to his claims; and

24   (5) production of claims data for providers other than Plaintiff would be extremely burdensome and

25   expensive. (Doc. # 118.)

26        **3.  Plaintiff's Reply (Doc. # 121)**

27        Plaintiff responds to Defendants' opposition by arguing: (1) Plaintiff had far less time than

28   Defendants represent to conduct discovery because it was stayed until March 5, 2010, and even then,

1   Defendants continued to obstruct discovery; (2) Plaintiff requested the claims data as far back as when

2   he served his First Request for Production of Documents on Defendants in July 2010, and Defendants

3   used the lack of claims data to oppose class certification when they argued that Plaintiff's expert did

4   not conduct an analysis of the claims data showing the impact on the class; (3) denial of class

5   certification was premised not on Plaintiff's failure to identify *per se* improper edits, but on a failure

6   to demonstrate a class-wide impact, which can only be shown through use of the claims data;

7   (4)  Defendants did not produce Plaintiff's own claims data, and even if they did, they do not explain

8   how that would enable Plaintiff to determine which and how many other providers have suffered

9   downcoding and bundling; and (5) Defendants have grossly overstated the burdensomeness of

10   producing the claims data. (Doc. # 121.) In support of his reply, Plaintiff filed the Declaration of his

11   expert, Stephen Foreman, PhD, JD, MPA.(Doc. # 122.)

12          **4.  Defendants' Sur-Reply (Doc. # 126)**

13          Defendants argue that Plaintiff still fails to identify the specific edits applied to his own

14   reimbursement claims he asserts were *per se* improper, and therefore, cannot possibly define a class

15   of other physicians who had the same improper edits applied to their claims. (Doc. # 126 at 2-7.)

16   Defendants also contest Plaintiff's claim that they obstructed discovery, and maintain that production

17   of the claims data would be burdensome and expensive. (Doc. # 126 at 7-10.)

18          **5.  Plaintiff's Sur-Reply (Doc. # 127)**

19          Plaintiff argues that Defendants do not dispute that a showing of class-wide impact can only

20   be made through the use of class-wide data. (Doc. # 127 at 2-3.) Plaintiff again asserts that Defendants

21   did not produce all of the data Plaintiff needed to make his required showing. (*Id*.  at 3.) Plaintiff

22   further argues Defendants misrepresent the conduct of discovery in this action, and that they

23   disregarded the testimony of their own Rule 30(b)(6) witness regarding the ease of producing the

24   claims data. (*Id*.  at 3-6.)

25                              **II.  DISCUSSION**

26          For the reasons set forth herein, the court exercises its discretion to deny Plaintiff's request for

27   production of the claims data.

28   ///

9

**A. TIMELINESS**

Under Rule 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any part's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). However, the court *must* limit discovery if it determines "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[.]" Fed. R. Civ. P. 26(b)(2)(C)(ii). For the reasons set forth below, the court finds that Plaintiff had ample opportunity to obtain the claims data and his effort to seek this discovery at this stage in the proceeding is untimely.

The discovery cutoff for class certification was initially set for December 1, 2010. (Doc. # 74.) Pursuant to an agreement between the parties, Magistrate Judge McQuaid subsequently extended the deadline to March 1, 2011. (Doc. # 85.) The order extending class certification discovery reads, "THERE SHALL BE NO FURTHER EXTENSIONS." (*Id*.)

In seeking discovery at this late juncture, Plaintiff relies on Magistrate Judge McQuaid's comments at the September 24, 2010 discovery hearing that he would hold the claims data issue in abeyance to see what occurs during the class certification process.

Magistrate Judge McQuaid's comment that he would re-visit the claims data issue if it became pertinent to the class certification proceedings cannot be viewed in a vacuum. In other words, the time period for possible discovery of the claims data was not unlimited in duration. Magistrate Judge McQuaid was clear that class certification discovery was to be completed by March 1, 2011. (Doc. # 85.) Because the class certification discovery extension was granted *after* the hearing on the dispute regarding discovery of the claims data, the inescapable conclusion is that *all* class discovery was to be completed by March 1, 2011. Moreover, the scheduling order itself mandated that class certification discovery be completed even before briefing began on the class certification motion. (*See* Doc. # 85.)

Therefore, if Plaintiff wanted to utilize claims data in connection with class certification, he was required to complete such discovery on or before March 1, 2011. Plaintiff failed to pursue discovery of the claims data within the prescribed time frame. Instead, Plaintiff now seeks production of the claims data because Judge Jones denied his motion for class certification. (*See* Doc. # 130 at 20:24-25, 30:1-5.)

1    Alternatively, and even though the order indicated no further extensions would be granted,

2    Plaintiff could have sought an extension of the class certification discovery deadline. In light of

3    Magistrate Judge McQuaid's comment that he would likely permit such discovery if Plaintiff

4    determined Defendants were going to use the claims data to oppose class certification, this would have

5    been the most reasonable course of action. Plaintiff did not file a motion to reopen discovery.

6    Plaintiff's motion suggests that instead of setting a firm deadline for the completion of class

7    certification discovery, a "floating" deadline was put into place, such that Plaintiff could seek

8    additional discovery in the event his class certification motion was denied. This was simply not

9    contemplated by any discovery order or Magistrate Judge McQuaid's comments at the discovery status

10   conferences.

11   Plaintiff's argument that he should be allowed to conduct claims data discovery at this point

12   because Magistrate Judge McQuaid's stated that production of the data would not be required until it

13   became clear it was pertinent to class certification (Doc. # 121 at 5) is unavailing.  Magistrate Judge

14   McQuaid never ruled that production of the claims data would be *required*.  Instead, he expressly tied

15   production of claims data to Defendants' use of the claims data in opposition to class certification.

16   (*See* Doc. # 113 at 7:9-16.) Moreover, Magistrate Judge McQuaid made clear that the reason he was

17   not requiring the production of the claims data was because Plaintiff represented that *he did not need

18   it* to support class certification, and therefore it was unnecessary. (Doc. # 113 at 3:23-25, 4:1-9.)

19   Plaintiff's argument that he "*sought* and *was denied*" the claims data discovery is not

20   convincing. (*See* Doc. # 121 at 3 (emphasis original).) Plaintiff asserts that his First Request for

21   Production of Documents sought the production of the claims data, and "Defendants refused to

22   produce such data[.]" (*Id.* at 6.) In reality, Plaintiff initially sought the claims data, and then

23   represented that he *did not need it for class certification*. (*See* Doc. # 113 at 3:23-25, 4:1-2, 13-14.)

24   Plaintiff concedes as much now because he still maintains that this information was not necessary for

25   class certification. (Doc. # 121 at 8 ("it was not in fact necessary for Plaintiff to do an analysis of

26   individual claims data for the entire class at the class certification stage[.]").) Again, Magistrate Judge

27   McQuaid confirmed this with Plaintiff's counsel, stating, "you're not going to use that data to support

28   your motion for class certification.  If you don't, then you don't need it." (Doc. # 113 at 4:1-3.)

11

1    If Plaintiff wants to adopt the position that he sought and was denied production of the claims

2    data, his remedy under the Federal Rules of Civil Procedure was to seek an order compelling

3    production of the claims data.  Plaintiff failed to do so.  Instead, and importantly, he represented to the

4    court that he did not need the claims data.

5    The court also points out that Magistrate Judge McQuaid was clear that Plaintiff could move

6    to seek this information if he discovered Defendants were utilizing it in their *opposition* to class

7    certification. (*See* Doc. # 113 at 4:3-9, 7:13-16.) Defendants initially filed their opposition to Plaintiff's

8    motion for class certification on May 17, 2011. (Doc. # 89.) They also filed their motion to exclude

9    the opinions of Plaintiff's expert, Stephen Foreman, on the same date. (Doc. # 88.) Plaintiff  now

10   argues that Defendants did try to use the failure to analyze the claims data as part of their opposition

11   to class certification in the context of their motion to exclude Plaintiff's expert. (Doc. # 121 at 8, Doc.

12   # 113 at 8:23-25; 9:1-10.)

13   The court finds this position troubling, if in fact Defendants' motion to exclude Plaintiff's

14   expert's opinions constituted use of the claims data. Instead of filing a motion to reopen discovery to

15   compel production of the claims data at that point, Plaintiff waited until after the class certification

16   hearing, when Judge Jones indicated his intent to deny class certification, to seek production of the

17   claims data. While Plaintiff points out that he did raise the issue in his opposition to Defendants'

18   motion to exclude Foreman's opinions (*see* Doc. # 130 at 9:11-19, referencing Doc. # 90 at 22)[2], he

19   did not file a motion seeking to reopen discovery or file a motion for production of the data at that

20   time, as he was instructed to do by Magistrate Judge McQuaid. (*See* Doc. # 113 ("if you--when you

21   see their opposition if you think that you need that information, I mean, just file a one-page document,

22   renewal and request for that, and we'll have a hearing, and you'll get your order.").)  Apparently

23   Plaintiff still did not think he needed the claims data as he did not file the "one-page document."

24   Moreover, Plaintiff's position is  inconsistent because he still  maintains that the claims data

25   was not necessary for class certification. (Doc. #  90 at 22; Doc. # 119 (Petition appealing the class

26   certification order).) Plaintiff candidly admits that the only reason he seeks the data now is because

27

28       [2] Counsel referenced page 19 of the brief, which is page 23 of the docketed version.  (*See* Doc. # 90.)

1  he believes that it is required pursuant to Judge Jones's order. (Doc. # 130 at 29:24-25, 30:1-5.) While

2  the court appreciates that Plaintiff did not think he needed the claims data to proceed with class

3  certification, that was a strategic decision Plaintiff chose to make.

4       In addition, Plaintiff argues that Defendants did not produce seven years of Plaintiff's own

5  claims data, as they represent, somehow depriving Plaintiff of the ability to analyze this data for

6  purposes of class certification. (Doc. # 121 at 14.) If Plaintiff believed that Defendants did not produce

7  what they were supposed to, with respect to Plaintiff's own claims data, again, his remedy was to file

8  a motion to compel *prior to* the close of class certification discovery. Plaintiff did not do so, and

9  therefore, he cannot now use that as a basis for an order for production of the claims data at this stage

10  in the proceeding.

11       To the extent Plaintiff argues that he is entitled to production of the claims data because the

12  Supreme Court issued its opinion in *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (2011), in the

13  middle of the class certification, the court also finds this argument unavailing. Even if Plaintiff thought

14  that *Dukes* required analysis of the claims data for class certification (Doc. # 121 at 9) (Plaintiff takes

15  the opposite position), Plaintiff should have sought an order reopening discovery at that point. In fact,

16  Judge Jones issued an order on June 27, 2011, after the Supreme Court issued its opinion in *Dukes*,

17  inviting further briefing. (Doc. # 97.) In his supplemental brief, Plaintiff argued that *Dukes* does not

18  significantly alter the analysis of the class certification motion. (Doc. # 105.)  Plaintiff claimed that

19  he could show commonality by demonstrating the existence of a pattern and practice applied to the

20  processing of claims submitted by providers for services rendered to Defendants' subscribers. (*Id*. at

21  4.) While Plaintiff noted the procedural history surrounding the claims data issue (*id*. at 10 n. 1), he

22  did not indicate that he thought production of the claims data was required for class certification

23  pursuant to *Dukes*. Instead, he continued to maintain that the claims data was not required for class

24  certification. (*Id*. at 10.)

25       Another point worth noting is that Plaintiff places much weight on his argument that

26  Defendants relied on the claims data in connection with their motion to exclude the opinions of

27  Plaintiff's expert, but Judge Jones denied that motion. In fact, Plaintiff does *not* contend that

28  Defendants raised the claims data in their opposition to the *class certification motion*. The court

surmises this is because Plaintiff's motion is really predicated on the outcome of the class certification hearing. (*See* Doc. # 121 at 13:7-8 ("The only way for Plaintiff to identify which providers were subjected to which edits would be for Plaintiff to *examine and analyze the claims data*.") (emphasis original).)

In sum, if Plaintiff intended to use the claims data, Plaintiff should have sought production of the data prior to the court-imposed class certification discovery deadline of March 1, 2011. At the very least, Plaintiff should have sought an extension of the class certification discovery deadline prior to its expiration, or sought to reopen discovery after receiving Defendants' motion to exclude Plaintiff's expert in connection with class certification.

**B. IMPACT ON EXPERT DISCOVERY**

The parties also agreed on, and the court ordered, corresponding extensions of the deadlines for expert reports. (*See* Doc. # 85.)

Presumably, the expert reports have been completed. If Plaintiff's request to reopen discovery for production of the claims data were granted, Plaintiff represents that his expert would need to analyze the data and provide further evidence concerning certification. (*See* Doc. # 112 at 3, Doc. # 130 at 59:3-12.) Logically, discovery would also have to be re-opened with respect to experts. This would cause considerable delay. The court does not believe that Magistrate Judge McQuaid envisioned opening the floodgates of discovery after expiration of the class certification discovery deadline, and certainly not after the hearing on class certification.

**C. BURDEN & EXPENSE**

Rule 26 provides that the court *must* limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Defendants argue the burden and expense of producing the claims data is unwarranted. (Doc. # 118, Doc. # 126.) Specifically, Defendants contend this additional discovery would encompass production of claims data dating back to December 2002, involving some four million reimbursement claims, and encompassing millions of pages of documents. (Doc. # 118 at 12, Ex. 1 (Decl. of Steven

14

1    Visser.)  This would require engaging an outside consultant to extract the millions of claims from its

2    data warehouse and prepare them for production. (*Id*.) Defendants estimate the cost of this production

3    as approximately $62,000. (*Id*.) This is in addition to attorneys' fees and costs associated with

4    production, as well as the burden on Defendants' staff. (*Id*.)  Moreover, Defendants argue that the

5    consultant's work would not be able to proceed until counsel identify and agree upon the relevant data

6    to be produced, which includes identification of the precise scope of claims for which data will be

7    obtained, the specific data elements to be obtained, and the format and media of the data. (*Id*.)

8        Plaintiff disputes Defendants' cost estimates and assert that Defendants would only be required

9    to reproduce the files for Defendants, and Plaintiff would be able to interpret them. (Doc. # 121, Doc.

10   # 122 (Decl.  of Stephen Foreman), Doc. # 127.) Plaintiff's expert, Stephen Foreman, concludes that

11   extraction of the four million claim lines would take a few hours at most. (Doc. # 122 at ¶ 9.)

12       At the hearing on this motion, Plaintiff's counsel conceded that she would also have to depose

13   Defendants' Rule 30(b)(6) witness regarding the information technology pertaining to how the claims

14   data is organized and how it can be analyzed. (Doc. # 130 at 59:1-12.) Plaintiff's counsel also indicated

15   that his expert would like  Defendants' "Data Dictionary" to be able to navigate Defendants' files. (*Id*.

16   at 60:7-11.)

17       The precise amount it would cost to produce the claims data is disputed by the parties. What

18   is clear, however, is that production of the claims data will likely involve considerable burden and

19   expense. This is evidenced by the manner in which Plaintiff has specified that Defendants produce

20   such data in their Request for Production of Documents. (*See* Doc. # 121-3 (Ex. E).)  Plaintiff's First

21   Request for Production of Documents is prefaced with eight (8) instructions and twenty-six (26)

22   definitions. (*Id*.)

23       The court has no doubt that the production of claims data will not be as simple as Plaintiff

24   suggest, *i.e.*, "Defendants, copy your files to a hard drive, and give them to Plaintiff." In addition, the

25   amount of additional attorney's fees and costs incurred by Defendants would be significant, and the

26   time and effort required of Defendants' staff to effectuate the production would be considerable.

27       Moreover, production of the claims data would undoubtedly lead to additional discovery

28   disputes, briefing, hearings, extensions of the discovery deadline, that would result in further delay of

1    this case.

2          In sum, the court finds that Plaintiff's request for production of the claims data at this stage of

3    the proceedings would be unduly burdensome and expensive.

4    **D. RELEVANCY**

5          As set forth above, Judge Jones denied class certification because Plaintiff had not established

6    numerosity, commonality, and typicality. (*See* Doc. # 115.) With respect to numerosity, Judge Jones

7    found that Plaintiff had not demonstrated that the approximately 900 physicians who have agreements

8    with Defendants have suffered the same downcoding or bundling determinations by Defendants.  (Doc.

9    # 115 at 6.)  Judge Jones characterized the flaw in Plaintiff's allegations, as far as class certification

10   is concerned, as follows: "he has alleged the numerosity of persons who *may have been* harmed, but

11   not the numerosity of persons who *have* been harmed[,]" and failed to "at least *allege* that the same

12   act or acts by the defendant has caused the same harm to a sufficiently numerous class of persons[,]"

13   which would require allegations "that such-and-such number of doctors with substantially similar

14   agreements were subjected to such-and-such particular improper downcodings and/or bundlings." (*Id*.

15   at 7.)

16         Judge Jones similarly determined that Plaintiff did not meet the commonality requirement

17   because Plaintiff failed to provide "evidence that *other doctors* suffered the *same* precise downcodings

18   or bundlings" to allow the court to "compare the standard logic used to process reimbursement claims

19   against the Agreement and statute, respectively, and determine whether the use of the logic violated

20   either, thereby determining the claims of many doctors 'in one stroke.'" (Doc. # 115 at 8 (emphasis

21   added).) The flaw once again, as noted by Judge Jones, was Plaintiff's failure to "allege how many

22   doctors were subjected to which particular improper downcodings and bundlings." (*Id*.  at 9.)

23         With respect to typicality, Judge Jones found that Plaintiff failed to show that the particular

24   downcoding and bundlings suffered by him were also suffered in common by a sufficiently numerous

25   class. (Doc. # 115 at 12.)

26         The court finds some merit in Defendants' argument that Plaintiff's request for the claims data

27   is the proverbial "fishing expedition" because Plaintiff has yet to even identify the specific edits that

28   he alleges were *per se* improper as to him, and seeks claims data for all of Defendants' providers, not

16

just those who suffered the same alleged injury. (Doc. # 118 at 5-12.) Judge Jones was clear that Plaintiff had to "show that the particular downcodings and bundlings suffered in common by a sufficiently numerous class were the same as those he himself suffered." (Doc. # 115 at 12.)

The court is concerned with how interpretation of diagnostic (ICD) codes or Current Procedural Terminology (CPT) codes for providers outside of Plaintiff's specialty will overcome the shortcoming addressed by Judge Jones. Defendants point out that there are some 7,000 separate CPT codes utilized, only a limited number of which apply to Plaintiff's specialty of pediatrics. (Doc. # 118 at 8.) Moreover, different types of providers perform different services, and therefore, submit different CPT codes for reimbursement. (*Id*.) Therefore, according to Defendants, Plaintiff has no basis to seek claims data with respect to those providers who do not even utilize the same reimbursement codes. (*Id*.)

Judge Jones's Order specifically states that Plaintiff failed to "identify subclasses of doctors who were allegedly cheated under specific ClaimCheck algorithms in order for common issues to predominate over individualzed issues for any particular subset of doctors." (Doc. # 115 at 12-13 (citing *Klay v. Humana*, 382 F.3d 1241, 1263, 65 (11th Cir. 2004).)  Without specific subclasses for each healthcare specialty covered by Defendants' plan, the discovery of all claims data appears irrelevant under the analysis of the District Court's Order.

Thus, in view of Judge Jones's order denying class certification, the court is skeptical that even if Plaintiff were permitted to undertake the claims data discovery he seeks, he would achieve the goal of class certification.

///

///

///

///

///

///

///

///

17

1

### III.  CONCLUSION

2        Because the proposed discovery is untimely, will require the reopening of expert discovery and

3 further delay of this case, is unduly burdensome and expensive, and likely irrelevant, and because

4 Plaintiff has not complied with Local Rule 26-7, Plaintiff's motion (Doc. # 112) is **DENIED**.

5        **IT IS SO ORDERED.**

6 Dated: January 13, 2011.

7

8

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28